In the Matter of the Application of GEORGE P. BRISTOL and Others, as Members of and Constituting the Retirement Board of the New York State Teachers' Retirement System, Respondents, for a Peremptory Mandamus Order against GEORGE S. BUCK and Others, as Members of and Constituting the Council of the City of Buffalo and the Trustees of the Public School Teachers' Retirement Fund of the City of Buffalo, and ISAAC N. STEWART, as City Treasurer of the City of Buffalo and Custodian of the Public School Teachers' Retirement Fund of the City of Buffalo, Appellants.

Third Department, May 3, 1922.

**Schools — State Teachers' Retirement Fund — petition by teachers in city of Buffalo contributing to local retirement fund to be transferred to State fund must be signed and verified by teachers — petition signed and acknowledged by teachers not sufficient on which to base order by retirement board of New York State Teachers' Retirement Fund directing local board to transfer fund to State fund — Education Law, § 1109-b, construed and applied — acknowledgment not equivalent to verification — Laws of 1911, chap. 449.**

A petition by more than two-thirds of the public school teachers of the city of Buffalo, signed and acknowledged by said teachers, to the effect that they are willing to become subject to article 43-B of the Education Law, providing for the State Teachers' Retirement Fund, did not constitute a compliance with section 1109-b of the Education Law (as added by Laws of 1911, chap. 449), which requires that the petition shall be " duly signed and verified " and, therefore, the retirement board of the New York State Teachers' Retirement Fund did not have jurisdiction to issue an order under said section, directed to the custodian and trustees of the public school teachers' retirement fund of the city of Buffalo, commanding them to pay over the retirement fund in their possession; a petition duly acknowledged is not equivalent to a petition duly verified.

HINMAN, J., dissents, with opinion.

APPEAL by George S. Buck and others from a peremptory mandamus order of the Supreme Court, made at the Rensselaer Special Term and entered in the office of the clerk of the county of Albany on the 3d day of February, 1922, commanding said appellants to pay and transfer to the State Treasurer moneys belonging to the Public School Teachers' Retirement Fund of the City of Buffalo.

*William S. Rann, Corporation Counsel [Jeremiah J. Hurley, Assistant Corporation Counsel,* of counsel], for the appellants.

*Frank B. Gilbert,* for the respondents.

COCHRANE, P. J.:

The Buffalo City Charter (Laws of 1914, chap. **217**, § 294 *et seq.,* as amd. by Laws of 1918, chap. 534, and Laws of 1919, chap. **56**) provides for a Public School Teachers' Retirement Fund of

that city.  The appellants herein under the provisions of said charter are the trustees and custodian respectively of such fund.

Article XLIII-B of the Education Law provides for a State Teachers' Retirement Fund for Public School Teachers.  The respondents herein under said act constitute the Retirement Board of such Retirement System.

Section 1109-b of said article XLIII-B as it existed on April 29, 1921, provided as follows:  " This article shall not apply to any county, city or district in which the teachers in the public schools thereof are required or authorized to contribute to a teachers' retirement fund, or in which such teachers are entitled to annuities or pensions, in accordance with any special or local act applicable to such county, city or district.  Provided, that whenever the State Teachers' Retirement Fund Board is satisfied that more than two-thirds of all the teachers employed in the public schools of any such county, city or district are willing to become subject to this article, as shown by a petition duly signed and verified by such teachers, such Board shall issue its order directing that on and after the date thereof this article shall apply to such county, city or district."  The section further provided that thereupon the provisions of said article should apply to such county, city or district and that the treasurer or other custodian of the local fund should pay the same into the State Treasury to be credited to the State Teachers' Retirement Fund.  (See Laws of 1911, chap. 449.)*

On said April 29, 1921, the State Teachers' Retirement Fund Board on petitions of more than two-thirds of the public school teachers of Buffalo pursuant to the provisions of section 1109-b above quoted made an order that on and after July 1, 1921, the provisions of the State law should apply to the city of Buffalo. Demand having been made of the appellants as trustees and custodian respectively of the Buffalo fund that the same be paid into the State Treasury and such demand having been refused a mandamus order has been issued in this proceeding requiring such payment.  From such order an appeal comes to this court.

The petition on which the State Teachers' Retirement Fund Board made its order extending the provisions of the State law to the city of Buffalo were signed separately by more than two-thirds of the public school teachers of the said city and were acknowledged by them.  They were not *verified* as the statute requires.  The respondents contend that the word " verified " does not always or necessarily imply a statement under oath; that a

---

* See Education Law, § 1102, subd. 4, and § 1109-l, as added by Laws of 1920, chap. 503.— [REP.

verification may have a different meaning depending on the context in which the word appears or the circumstances or nature of the matter under consideration to which the word applies. We yield to this contention as a general proposition although we think that as used in a statute the word ordinarily imports a verity attested by the sanctity of an oath. The question here, however, is not how the word should be construed in this statute because these petitions in question are not verified in any manner whatsoever. The acknowledgment is an authentication or verification of the signature of the petitioner but it does not extend to the petition. It establishes merely that the petition was " duly signed." It proves the identity of the person whose name appears on the petition and that such person signed the petition. But it goes no further. Moreover if regarded as a verification it is such by the notary public while the statute requires that the verification shall be by the teachers. The respondents are inaccurate in their statement that the petitions express nothing but a willingness on the part of the teachers to enter the State system and that there is, therefore, no fact to be verified. The petitions establish that the petitioners are teachers employed in the public schools of Buffalo and that in number they constitute more than two-thirds of all the teachers so employed. It is only on proof of these facts established by such a petition in the manner prescribed by the statute that the State Board is authorized to act. Furthermore, if it should be held that the petitions denote nothing more than a willingness on the part of the petitioners to become subject to the State system that would not obviate the plain requirement of the statute. That requirement is that the petition shall be " duly signed and verified by such teachers." There must be a signature and also a verification and each by the teachers. Liberality in construction of statutes may not be stretched to the point of disregarding their plain requirements. We are no more at liberty to disregard words contained in a statute than we are at liberty to interpolate words therein. In no aspect of the situation have these petitions been " verified by such teachers." There has been a non-compliance with the statute and the State Board was, therefore, unauthorized to make the order extending the State system to the city of Buffalo and the Special Term was unauthorized to grant the order requiring the appellants to pay into the State Treasury the Public School Teachers' Retirement Fund of Buffalo.

The order should be reversed, with costs, and the application dismissed, with fifty dollars costs and disbursements.

All concur, except HINMAN, J., dissenting, with an opinion.

HINMAN, J. (dissenting):

I am unable to agree with the conclusion that the order of the Special Term should be reversed for failure to comply with the merger provisions of the statute.

The appellants raise three questions: (1) As to whether there was a due compliance with the statutory provisions; (2) as to the constitutionality of the act authorizing the merger of the local fund with the State fund; and (3) as to the constitutionality of the present State Teachers' Retirement Fund Act (Laws of 1920, chap. 503, adding to Education Law, art. 43-B).

The constitutionality of section 1109-b of the Education Law, as added by chapter 449 of the Laws of 1911, has been clearly declared by this court in *Matter of Bristol* v. *Board of Trustees* (173 App. Div. 545).

There is no improper delegation of the legislative power to the teachers as urged by the appellants. While the first sentence of section 1109-b of the Education Law (as added by Laws of 1911, chap. 449)* specifically provides that the retirement fund article shall not apply to a city having a local act (which included Buffalo), the second sentence must be read with it. When so read, the legislative intent is clearly expressed to mean that the law was statewide in its application but not operative in certain described localities until adopted by local option. The statute prescribes the law which is to be enforced. Those who are permitted to accept the benefit of its provisions do not participate in moulding the law. Their act is simply a matter of adoption of that which is complete in itself and which in no sense leaves to any individual or set of individuals the right to exercise their judgment as to what the law shall be. (*Cleveland* v. *City of Watertown,* 222 N. Y. 159.)

The question raised as to the constitutionality of chapter 503 of the Laws of 1920 need not and should not be passed upon in this proceeding. That question deals only with an increase in the amount of annuities to be paid to teachers previously retired. Even if that provision of the law should be declared unconstitutional, it would not affect the validity of the State Teachers' Retirement Fund Act as a whole. Moreover, many persons whose rights have accrued under that chapter are not parties to this proceeding and they should be given an opportunity to be heard.

Counsel for appellants is in error in assuming that the provisions of chapter 503 of the Laws of 1920 represented the law of the State in compliance with which the merger application was made. The teachers of Buffalo properly brought their proceeding under

* See Education Law, § 1102, subd. 4, and § 1109-l, as added by Laws of 1920, chap. 503.— [REP.

section 1109-b as it existed prior to the passage of chapter 503 of the Laws of 1920. It is true that chapter 503 of the Laws of 1920 took effect immediately (May 4, 1920), but section 1 of chapter 503 of the Laws of 1920 expressly provides that the previous law should not be repealed until on and after August 1, 1921, and by section 1101 of the Education Law, added by such chapter, the establishment of the new retirement system was postponed until August 1, 1921. In the meantime and on April 29, 1921, the merger of the Buffalo local system with the State system was carried out by order of the State Teachers' Retirement Fund Board.

The only real question in the case seems to be with reference to whether there was a substantial compliance with the law so as to constitute a valid merger. I think there was. The statute is remedial, intended for the benefit of teachers who are willing to adopt its provisions, and should be liberally construed to give effect to their willingness. No teacher opposes the merger so far as the record shows. Certain officials of the city constituting simply the custodians and managers of the local fund, with no proprietary interest in the fund vested in them or in the city, are the sole persons raising any question here. In *Matter of Bristol* (*supra*) this court raised a question as to whether such custodians of the local fund were in a position to raise such questions as were sought to be determined upon that appeal. Assuming that they have the right we cannot escape the conclusion that their purpose in so doing is ostensibly to avoid the added burden upon their municipality which the merger would entail. This added burden has been universally adopted, outside of Buffalo, in accordance with the law. While as trustees of the fund in their possession it may well be their duty to test the legality of the transfer of the funds out of their hands, no sound governmental purpose is to be served by yielding to the strict interpretation of the statute which they seek to have adopted in order to frustrate what seems to be the genuine act of a sufficient number of the public school teachers of their city. Our attitude should be to give effect to the genuine acts of the teachers if possible. No question is raised as to the sufficiency of the number of signers. Each has duly acknowledged his signature and the execution of a petition reciting his employment as a regularly licensed teacher and his petition for membership in the State Fund as provided in the act. I think the intent of the act was that a sufficient number of teachers should in some way be on record as having expressed their willingness to become members of the State system, and that their identity as teachers and their willingness to have the change should be properly authenticated so that there would always be a provable record of

their assent.   The determination as to whether a sufficient number had signed was a mere matter of mathematical computation from public records showing the number of teachers employed in the public schools of that locality.   This information was not a matter within the special knowledge of the teachers.   It was equally available to the State Board and to the public generally.   The use of the word " verified " as used in statutes has not always been construed to have the strict and precise signification which we give to it in connection with pleadings and petitions addressed to the court containing statements of fact, the truth of which as a matter of sound judicial practice should be attested by an oath.   (*Summerfield* v. *Phœnix Assurance Co.*, 65 Fed. Rep. 292, 296; *De Witt* v. *Hosmer*, 3 How. Pr. 284; *Guarantee Co.* v. *Mechanics Savings Bank & Trust Co.*, 80 Fed. Rep. 766, 777; *Board of Medical Examiners* v. *Taylor*, 56 Tex. Civ. App. 291.)

Where a word has two shades of meaning properly attributable to it, that meaning should be adopted which will comport with the intent of the act.   (*De Witt* v. *Hosmer, supra.*)

Where a statute is a remedial one " too much stress should not be laid on the strict and precise signification of words, but they should be construed liberally, with a view to the beneficial end proposed."   (*Ayers* v. *Lawrence*, 59 N. Y. 192, 196.)

Moreover, the Legislature reposed large powers of judicial discretion in the State Teachers' Retirement Fund Board in judging of the sufficiency of the petition.   The statute says: " Whenever the State Teachers' Retirement Fund Board *is satisfied* that more than two-thirds of all the teachers   *   *   *   are willing to become subject to this article, as shown by a petition duly signed and verified by such teachers, such Board shall issue its order directing that *   *   *   this article shall apply to such county, city or district." Not only was the Board given liberal power in making its determination but it would not be straining the language used too much to hold that the only thing required by the statute to appear upon the face of the petition was the fact of the willingness of the teachers and proof of their identity as such without necessarily requiring upon the face of the petition any statement verified by oath or duly acknowledged showing or tending to show that there was the requisite percentage of teachers who had signed.   The Board could obtain that information from the public records without such assistance but the willingness of the teachers could only be determined by their own voluntary act.

I favor an affirmance of the order.

Order reversed, with costs, and application dismissed, with fifty dollars costs and disbursements.